## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KENDRA MARSHALL,

$\qquad$ **Plaintiff,**

v.                                                    **1:14-cv-2421-WSD**

DENTFIRST, P.C.,

$\qquad$ **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Kendra Marshall's ("Plaintiff") Motion to Dismiss or in the Alternative for Sanctions for Spoliation of Evidence [19] ("Motion").

## I.     BACKGROUND

From October 20, 1992, to October 19, 2011, Plaintiff was employed by DentFirst, P.C. ("Defendant" or "DentFirst") in various positions, most recently as a Practice Administrator.  (Compl. [1] ¶¶ 7, 11).  When Defendant terminated Plaintiff's employment on October 19, 2011, it indicated, on a form used in connection with obtaining unemployment benefits, that Plaintiff's termination was due to "Lay off—Reduction in workforce."  (Id. ¶ 11).

On April 13, 2012, Plaintiff filed her Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 6; Pl's Mot. at Ex. 4).  Plaintiff alleges that DentFirst terminated her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

On May 4, 2012, the EEOC notified Defendant of Plaintiff's EEOC Charge. (Pl's Mot. at Ex. 10).  On June 15, 2012, Defendant responded to Plaintiff's EEOC Charge, asserting, among others, that Plaintiff was terminated because she "always shopped online" and "was not properly managing collections and Pre-treatment estimate reports."  (Id. at Ex. 2).  On May 6, 2014, Plaintiff received a notice of right to sue from the EEOC.  (Compl. ¶ 6).

On July 28, 2014, Plaintiff filed her Complaint, asserting six (6) claims based on violation of the ADEA.[1]  Plaintiff contends that Defendant's proffered reasons for terminating Plaintiff—first, "reduction in workforce," and, in response to the EEOC Charge, Plaintiff's unsatisfactory performance—are pretext for age discrimination.

---

[1]    Plaintiff asserts claims for disparate treatment (Count One), disparate impact (Count Two), "intentional discriminatory termination" (Count Three), "intentional discriminatory termination with malice" (Count Four), "willful discriminatory termination with malice" (Count Five), and "discriminatory termination with reckless indifference" (Count Six), all in violation of the ADEA.

On October 15, 2014, Plaintiff served her First Interrogatories and First Requests for Production, which request, among others, documents, information and records related to Plaintiff's management of pretreatment estimate reports ("pretreatments")[2] and her internet browsing history.  Plaintiff contends that Defendant failed to disclose any pretreatments or requested computer records.

On August 28, 2015, Plaintiff filed her Motion.  Plaintiff seeks sanctions against Defendant based on its alleged failure to preserve (1) the pretreatments Defendant claims Plaintiff mismanaged, and (2) information that would have been stored on the computer Plaintiff used while employed at DentFirst, including evidence of Plaintiff's online browsing history and emails she sent and received, which, Plaintiff claims, relates to whether Plaintiff was "always shopping online." Plaintiff contends that, because the pretreatments, online browsing history and emails are the only direct evidence that would either fully refute or confirm Defendant's specific allegations regarding its reasons for terminating Plaintiff, the Court should strike Defendant's Answer as a sanction for its alleged spoliation.

---

[2]    A pretreatment is a document that lists the necessary procedures for a patient and which DentFirst sends to the patient's insurance company for review and approval.  (Dowd. Dep. [19.13] at 19).

**II.     DISCUSSION**

    A.     <u>Legal Standard</u>

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  <u>Graff v. Baja Marine Corp.</u>, 310 F. App'x 298, 301 (11th Cir. 2009) (internal quotation marks omitted) (quoting <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999)).  A party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time; (2) the defendant had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff's prima facie case.  <u>See</u> <u>In re Delta/AirTran Baggage Fee Antitrust Litig.</u>, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).  In considering the particular spoliation sanction to impose, "courts should consider the following factors: (1) prejudice to the non-spoling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded." <u>Id.</u> (citing <u>Flury v. Diamler Chrysler Corp.</u>, 427 F.3d 939, 945 (11th Cir. 2005)).

    Even if the Court finds spoliation, a sanction of default or an instruction to the jury to draw an adverse inference from the party's failure to preserve evidence

is allowed "only when the absence of that evidence is predicated on bad faith."
Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997).  A showing of bad faith
requires the plaintiff to demonstrate that a "party purposely loses or destroys
relevant evidence."  Id.  Mere negligence in destroying evidence is not sufficient to
justify striking an answer.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310
(11th Cir. 2009).  In determining whether to impose sanctions for spoliation, "[t]he
court should weigh the degree of the spoliator's culpability against the prejudice to
the opposing party."  Flury, 427 F.3d at 946.

Effective December 1, 2015, Rule 37(e) of the Federal Rules of Civil
Procedure was amended to establish the findings necessary to support certain
curative measures for failure to preserve electronically stored information.[3]  This
amendment "forecloses reliance on inherent authority or state law to determine
when certain measures should be used" to address spoliation of electronically
stored information.  See Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015
Amendment.  Amended Rule 37(e) provides:

> **Failure to Preserve Electronically Stored Information.**  If
> electronically stored information that should have been preserved in
> the anticipation or conduct of litigation is lost because a party failed to

---

[3]   The version of Rule 37(e) effective at the time Plaintiff filed her Motion
states: "Absent exceptional circumstances, a court may not impose sanctions under
these rules on a party for failing to provide electronically stored information lost as
a result of the routine, good-faith operation of an electronic information system."

take reasonable steps to preserve it, and it cannot be restored or
replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the
> information, may order measures no greater than necessary to
> cure the prejudice; or

> (2) only upon finding that the party acted with the intent to deprive
> another party of the information's use in the litigation may:

>> (A) presume that the lost information was unfavorable to the
>> party;

>> (B) instruct the jury that it may or must presume the
>> information was unfavorable to the party; or

>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  This version of Rule 37(e) applies to civil cases commenced

after December 1, 2015, "and, insofar as just and practicable, all proceedings then

pending."  See 2015 US Order 0017; 28 U.S.C. § 2074(a).

The Court concludes that applying the amended version of Rule 37(e) would

be just and practicable, including because the amended to Rule 37(e) does not

create a new duty to preserve evidence.  See Fed. R. Civ. P. 37(e), Advisory

Committee Note to 2015 Amendment ("Rule 37(e) does not purport to create a

duty to preserve.  The new rule takes the duty as it is established by case law,

which uniformly holds that a duty to preserve information arises when litigation is

reasonably anticipated.");  Brown Jordan Int'l, Inc. v. Carmicle,

No. 0:14-CV-60629, 2016 WL 815827, at *36 (S.D. Fla. Mar. 2, 2016) (citing

CAT3, LLC v. Black Lineage, Inc., No. 14 Civ. 5511, 2016 WL 154116, at *5

(S.D.N.Y. Jan. 12, 2016) & Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.,

194 F.R.D. 378, 382 (D. Mass. 2000) (holding that, while conduct of litigant

should be judged by Rule 11 in effect when conduct occurred, sanctions should be

governed by amended rule, which made them discretionary rather than

mandatory)).  The Court also concludes that the considerations for evaluating

whether, and to what extent, to impose spoliation sanctions under Eleventh Circuit

case law and under Rule 37(e), as amended, are substantially similar, and even if

Rule 37(e) did not apply, the Court would reach the same conclusion.[4]

B.   Analysis

1.   Whether Defendant failed to preserve information

The Court assumes, without deciding, that Defendant should have

reasonably anticipated litigation regarding Plaintiff's termination, at the earliest, on

May 4, 2012, when Defendant was notified that Plaintiff filed her EEOC Charge.

See, e.g., Fed. R. Civ. P. 37(e); Richard Green (Fine Paintings) v. McClendon,

262 F.R.D. 284, 289 (S.D.N.Y. 2009) ("Although this [duty to preserve]

commonly occurs at the time a complaint is filed, it can also arise earlier, for

---

[4]    The Court notes that the parties, in their submissions, relied mainly on
Eleventh Circuit case law rather than Rule 37(e).

instance when a disgruntled employee files an EEOC charge or at the point where relevant individuals anticipate becoming parties in imminent litigation.") (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) & Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).  The question, then, is whether Defendant failed to preserve relevant information that existed when it learned of Plaintiff's EEOC Charge.  See Fed. R. Civ. P. 37(e); In re Delta/AirTran, 770 F. Supp. 2d at 1307 ("[A] party's obligation to retain documents, including emails, is only triggered when litigation is reasonably anticipated."); Wilder v. Rockdale Cty., No. 1:13-cv-2715-RWS, 2015 WL 1724596, at *3 (N.D. Ga. Apr. 15, 2015) ("It is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party.") (quoting Sentry Select Ins. Co. v. Treadwell, 734 S.E.2d 818, 848 (Ga. Ct. App. 2012)); Zubulake, 220 F.R.D. at 218 ("A party or anticipated party must retain all relevant documents . . . in existence at the time the duty to preserve attaches, and any relevant documents created thereafter.").

a.   Pretreatments

Christina Bennett, DentFirst's Director of Operations, stated that she received complaints about Plaintiff and that she conducted the investigation of these complaints, which ultimately led to Plaintiff's termination.  Ms. Bennett

8

testified that there "was a complaint from the doctor and the hygienist, that the pretreatments weren't being entered or called on or followed up on . . . ." (Bennett Dep. [19.6] at 117).  When asked whether there would be documentation to support that, Ms. Bennett responded: "I can't have a trail of something that's not being done.  I don't have a paper trail of something that never got entered, for instance.  So I can't use that as comparison." (Id. at 118).[5]

Even if there were pretreatments for Ms. Bennett to review during her investigation, Plaintiff fails to show that, when Defendant received Plaintiff's EEOC Charge, the allegedly mishandled pretreatments still existed.  Although Dr. Dowd, the Chief Information Officer of DentFirst and one of its owners, testified that pretreatments are kept for 24 months, he also testified that, "during that time, they can be deleted by anybody," including "if the procedure has been accomplished for the patient." (Dowd Dep. at 19-20).  There is no evidence to support that, when Defendant received notice of Plaintiff's EEOC Charge—seven (7) months after Plaintiff's termination—the pretreatments Plaintiff allegedly did not enter existed, but Defendant later failed to preserve them.  See In re

---

[5]     Plaintiff does not argue, and the evidence does not support, that there was other document evidence related to the pretreatments Plaintiff allegedly failed to enter.  The evidence is that Ms. Bennett received oral complaints that Plaintiff was not entering pretreatments, and that Ms. Bennett's investigation consisted of interviewing the employees who made the complaints.

Delta/AirTran, 770 F. Supp. 2d at 1307; Wilder, 2015 WL 1724596, at *3;

Zubulake, 220 F.R.D. at 218.

b.      Internet Browsing History

Ms. Bennett stated that DentFirst employees reported, orally, that Plaintiff

shopped online during the workday.  Ms. Bennett testified that she does not have

any records from DentFirst showing Plaintiff's online activity and that she did not

investigate the complaints with Defendant's IT Department because "[a]fter talking

with her employees about the vast arrays of complaints that they had, [Ms.

Bennett] felt that [her] information was sufficient."  (Bennett Dep. at 82-85).

Dr. Dowd testified that DentFirst does not have a document retention policy

regarding internet browsing history and DentFirst does not retain browsing history

on its company-wide server.  (Dowd Dep. at 23, 57).  Dr. Dowd stated:

> Browsing history, for the record, is a listing of what particular
> websites a computer visited during a period of time.  Those records
> can be removed by the user at any point by a function called clear
> browsing history.  It could be removed if that user chose to remove it.
> It doesn't cross over to our central system.  We do not keep a record
> of browsing history in our system of who accessed what or when.

(Id. at 57-58).  Any record of Plaintiff's browsing history, thus, could only be

contained on the computer Plaintiff used while working for Defendant.  To the

extent Plaintiff claims that this evidence was spoliated when Defendant recycled

her computer after her termination, Plaintiff does not allege how often, if at all, she

cleared her browser history, and there are no facts to support that a record of

Plaintiff's browsing history would have remained on her computer seven

(7) months after her termination, or longer, such that DentFirst would have had a

duty to preserve it.  See In re Delta/AirTran, 770 F. Supp. 2d at 1307; Wilder,

2015 WL 1724596, at *3; Zubulake, 220 F.R.D. at 218.

c.      Plaintiff's emails

Plaintiff does not argue, and there is no evidence to support, that Plaintiff's

emails contained information related to her alleged failure to enter pretreatments or

online shopping.  See Cox v. Target Corp., 351 F. App'x 381, 383 (11th Cir. 2009)

(denying motion for spoliation sanction where plaintiff failed to establish that

destroyed videotape contained relevant footage of fall at issue).  To the extent

Plaintiff claims the number of emails she sent in the weeks prior to her termination

would show the extent of her work and disprove that she shopped online, Plaintiff

does not assert that she kept her emails for a specific period of time, or that she

would not have deleted them herself, such that the emails existed at the time

Defendant had a duty to preserve them.  See In re Delta/AirTran, 770 F. Supp. 2d

at 1309; Wilder, 2015 WL 1724596, at *3.  Even if she did, it is well-settled that "a

corporation under a duty to preserve is not required to keep every shred of paper,

every e-mail or electronic document, and every backup tape. . . . In essence, the

11

duty to preserve evidence extends to those employees likely to have relevant information—the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary."  In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig., 299 F.R.D. 502, 517-518 (S.D. W.Va. 2014) (internal quotation marks and citation omitted); see also Zubulake, 220 F.R.D. 217-18 (As a general rule, a party need not preserve all backup tapes for e-mail even when it reasonably anticipates litigation.); cf. Concord Boat Corp. v. Brunswick Corp., No. LR-C-95-781, 1997 WL 33352759, at *4 (E.D. Ark. Aug. 29, 1997) ("[T]o hold that a corporation is under a duty to preserve all email potentially relevant to any future litigation would be tantamount to holding that the corporation must preserve all e-mail . . . . Such a proposition is not justified.").

Plaintiff fails to show that, at the earliest time Defendant reasonably should have anticipated litigation regarding Plaintiff's termination, relevant pretreatments, Plaintiff's internet browsing history, or her emails existed, but Defendant failed to preserve them.  See Fed. R. Civ. P. 37(e); In re Delta/AirTran, 770 F. Supp. 2d at 1307; Wilder, 2015 WL 1724596, at *3; Zubulake, 220 F.R.D. at 218.  Plaintiff's Motion is denied.[6]

---

[6]    To the extent Plaintiff, for the first time in her Reply, relies on "additional facts" regarding two DentFirst customers whose complaints, Defendant asserts, were handled inappropriately by Plaintiff, these issues are not properly before the

2.    <u>Prejudice</u>

Even if the evidence existed at the time Defendant had a duty to preserve it,

Plaintiff fails to show that she suffered prejudice, that is, that the evidence was

crucial to Plaintiff being able to prove her prima facie case.  <u>See</u> Fed. R. Civ. P.

37(e)(1) (court may impose sanctions "upon finding prejudice"); <u>In re</u>

<u>Delta/AirTran</u>, 770 F. Supp. 2d at 1310 ("Where, as here, the moving party is not

able to establish that the allegedly destroyed evidence is critical to the case, courts

have consistently refused to impose spoliation sanctions.") (collecting cases).

Plaintiff contends that she has been prejudiced because the pretreatments, online

browsing history and emails are the only direct evidence that would either fully

---

Court and the Court will not consider them.  <u>See, e.g.</u>, <u>Timson v. Sampson</u>,
518 F.3d 870, 874 (11th Cir. 2008) ("[W]e do not address arguments raised for the
first time in a *pro se* litigant's reply brief."); <u>Lovett v. Ray</u>, 327 F.3d 1181, 1183
(11th Cir. 2003) ("Because he raises that argument for the first time in his reply
brief, it is not properly before us."); <u>United States v. Ga. Dep't of Natural Res.</u>,
897 F. Supp. 1464, 1471 (N.D. Ga. 1995).
    Even if the Court considered them, there is no evidence that Defendant
received Ms. Davis's email complaints, such that Defendant failed to preserve
them.  Plaintiff's assertion that Defendant's failure to disclose Ms. Davis's emails
"illustrates the possibility that other, potentially discoverable and/or admissible
evidence has also been destroyed by Defendant, the identity of which remains
unknown to Plaintiff' (Reply at 5), is rank speculation and wholly insufficient to
support a finding of spoliation.  <u>See</u> <u>In re Delta/AirTran</u>, 770 F. Supp. 2d at 1309.
Further, any claimed prejudice to Plaintiff based on Defendant's alleged spoliation,
or failure to produce, Ms. Davis's emails and a letter Defendant sent to another of
its customers, is mitigated by Plaintiff's opportunity to interview those customers
and the DentFirst employees who reported, and investigated, Plaintiff's alleged
inappropriate interaction with customers.  <u>See</u> <u>id.</u> at 1311.

refute or confirm Defendant's alleged reasons for terminating Plaintiff.  The Court disagrees.

Where, as here, an employee relies on circumstantial evidence to support that the proffered reason for an adverse employment action was pretext discrimination under the ADEA, the Court applies the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000); Elrod v. Sears, Robuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991); accord Quigg v. Thomas Cty. Sch. Dist., -- F.3d --, No. 14-14530, 2016 WL 692177 (11th Cir. Feb. 22, 2016) (distinguishing between single-motive or "pretext" theory of discrimination, which applies McDonnell Douglas framework, and mixed-motive theory, which requires employee to show that a discriminatory bias was a motivating factor for an adverse employment action).  Under the McDonnell Douglas burden shifting framework, a plaintiff asserting a claim under the ADEA must first establish a prima facie case of age discrimination by showing that she "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by . . .  a younger individual." Chapman, 229 F.3d at 1024.  The burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the challenged employment action."  Id.

14

If the employer does so, the plaintiff must demonstrate that the employer's proffered reason is a pretext for discrimination.  Id.

To show pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head-on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  Id. at 1030; cf. Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("Alvarez argues at length that [defendant's] complaints about the quality of her work were unfounded, but the fact that she thinks more highly of her performance than her employer does is beside the point. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head.").

The Eleventh Circuit has consistently held: "For an employer to prevail the jury need not determine that the employer was correct in its assessment of the

employee's performance; it need only determine that the defendant in good faith _believed_ plaintiff's performance to be unsatisfactory." Elrod, 939 F.2d at 1470 (quoting Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n.4 (11th Cir. 1982)) (emphasis in original). That is, "if the employer acted on an honestly held belief that the employee engaged in misconduct, even if it was mistaken, no discrimination exists." Vahey v. Philips Elect.N. Am. Corp., 461 F. App'x 873, 875 (11th Cir. 2012). In Elrod, the Eleventh Circuit stated:

> Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees interviewed by Rives were lying through their teeth. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill _believed_ that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge. See Hawkins v. Ceco Corp., 883 F.2d 977, 980 n. 2 (11th Cir. 1989), cert. denied, 495 U.S. 935 (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.). Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."

Elrod, 939 F.2d at 1470 (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)). See also Vahey, 461 F. App'x at 876 (plaintiff failed to establish pretext where there was no evidence to support that supervisor

believed complaints lacked credibility, especially in view of supervisor's
interviews of plaintiff's subordinates and independently-conducted review of
plaintiff's performance); Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181,
1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a
bad reason, a reason based on erroneous facts, or for no reason at all, as long as its
action is not for a discriminatory reason.").

Here, there is no evidence to support that the allegedly spoliated documents
were reviewed, relied upon, or even available, during Ms. Bennett's investigation.
The record is that Ms. Bennett received oral complaints regarding Plaintiff's
performance, and that she investigated the complaints by interviewing DentFirst
employees.  The question here is not whether the "facts" underlying the complaints
Ms. Bennett investigated are true, or even what evidence could have existed to
disprove them.  Rather, the question is whether Defendant honestly believed that
Plaintiff mishandled pretreatments and was shopping online during work hours,
and, if so, whether this belief was the reason Plaintiff was terminated.  See Elrod,
939 F.2d at 1470; Alvarez, 610 F.3d at 1266; cf. Rojas v. Florida, 285 F.3d 1339,
1342 (11th Cir. 2002) (In analyzing pretext, "we must be careful not to allow Title
VII plaintiffs simply to litigate whether they are, in fact, good employees.");
Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004) ("Whether

[plaintiff's] conduct was insubordinate is not an issue for this Court to referee."). Because the focus is on Defendant's belief and its investigation of the facts underlying the complaints, any claimed prejudice Plaintiff suffered by the alleged spoliation is mitigated by her opportunity to depose the DentFirst employees who reported, and investigated, Plaintiff's misconduct.  See In re Delta/AirTran, 770 F. Supp. 2d at 1311 (finding that any prejudice plaintiffs suffered when defendants' emails were deleted was mitigated by opportunity to depose defendants' employees who had knowledge of facts related to plaintiffs' claims). Plaintiff fails to show that critical information existed but was destroyed, and she otherwise fails to show that she suffered prejudice sufficient to support the sanction she seeks.  See id.; Flury, 427 F.3d at 945-46; Fed. R. Civ. P. 37(e). Plaintiff's Motion is denied for this additional reason.

### 3.   Bad Faith or Intent to Deprive Plaintiff of Information

Even if Plaintiff could show that Defendant spoliated critical information, Plaintiff fails to show that Defendant acted in bad faith or with intent to deprive Plaintiff of the use of the information in this litigation.  See Fed. R. Civ. P. 37(e)(2) (court may presume that the lost information was unfavorable to the party, instruct the jury on spoliation inference, or dismiss the action or enter default judgment, "only upon finding that the party acted with the intent to deprive another party of

the information's use in the litigation"); Mann, 588 F.3d at 1310 (Mere negligence in destroying evidence is not sufficient to justify striking an answer.); Bashir, 119 F.3d at 931 (Sanction of default or an instruction to the jury to draw an adverse inference from the party's failure to preserve evidence is allowed "only when the absence of that evidence is predicated on bad faith.").[7]

Plaintiff relies on Defendant's counsel's representation that "Ms. Marshall [sic] computer records/files became unavailable the day after she was terminated— the computer was wiped clean and put back into use," to show that Defendant acted in bad faith, including because it was not Defendant's standard procedure to wipe clean a computer immediately after an employee is terminated.  Although Defendant fails to specify when in 2012 Plaintiff's computer was reformatted and recycled, there are no facts in the record to support that it was wiped clean the day after Plaintiff's October 19, 2011, termination.

Dr. Dowd testified that he verified with his "hardware guru, Chau . . . that hardware that was used by Ms. Marshall was not available" because Plaintiff's computer had been replaced as part of a company-wide upgrade program and

---

[7]     Plaintiff contends that "[n]o sanction other than dismissal would be sufficient" because the pretreatments, online browsing history and emails are the only direct evidence that would either fully refute or confirm Defendant's alleged reasons for terminating Plaintiff.  Plaintiff does not argue in the alternative for lesser sanctions that would not require a showing of bad faith or intent to deprive Plaintiff of the information's use in this litigation.  See Fed. R. Civ. P. 37(e)(2).

recycled by an outside vendor.  (Dowd Dep. at 28-29).  Dr. Dowd stated that Chau,

another DentFirst employee, would have been responsible for "wiping the hard

disk clean," which is usually done when a computer is upgraded or replaced, but

that he had not discussed with Chau specifically whether Plaintiff's computer was

wiped clean.  (Id. at 48).  Dr. Dowd testified:

> Q.    Are you aware specifically whether the e-machine Kendra
> Marshall used was reformatted or wiped clean following her
> termination?
>
> A.    What I was told was that most of the machines are recycled and
> they were not able to find her machine.
>
> Q.    You were not told that it was wiped clean?
>
> A.    I was not.
>
> Q.    You were not told that it was reformatted?
>
> A.    I was not.

(Id. at 48-49).  Dr. Dowd stated that it is not DentFirst's practice to "wipe clean or

reformat [a former employee's computer] so it can be reused by another

employee," "nor would [he] recommend that that be done," because the

"information that was on the computer would be practice related and perhaps

needed by the next practice administrator to use that computer."  (Id. at 50).

Dr. Dowd testified further:

Q.    . . . In your investigation and speaking with your IT personnel, was the computer Kendra Marshall used wiped clean or reformatted so it could be used for another employee?

A.    No.  It was scrapped.

Q.    But prior to it being scrapped - -

A.    It was removed and scrapped.  It was not used.

Q.    Was it immediately removed and scrapped upon her termination?

A.    It was removed, along with the other e-machines, a year and a half or two years ago, which was after she had departed.

Q.    So the time frame of that is not definitively known; is that correct?

A.    When I asked Chau, he said a year and a half or so ago.  I'm kind of interpreting his statement.  I believe it was a year and a half.

Q.    You are looking at maybe the end of 2013 or the beginning of 2014; is that your understanding?

A.    Perhaps, yes.

Q.    Do you have any idea where the information came from that the computer was wiped clean the day after Ms. Marshall was terminated?

A.    No, I hadn't heard that.

(Id. at 52-53).

In its response to Plaintiff's First Requests for Admissions, which Plaintiff

served after Dr. Dowd's deposition, Defendant denies that it wiped clean or

reformatted Plaintiff's computer the day after she was terminated.  (Def's Resp. to

Pl's Request for Admission No. 13).  Defendant also

> admits that counsel for Defendant, before completing the investigation
> as to what happened to the work computer that was used by Plaintiff
> during her employment, told counsel for Plaintiff that the computer in
> question had been reformatted or wiped clean.  After further
> investigation, counsel for Defendant advised counsel for Plaintiff that
> the computer in question was recycled with the computers which had
> been assigned to DentFirst practice administrators, and that the
> computer Plaintiff used was not segregated out for individual
> reformatting, recycling, or treatment.  The recycling of the practice
> administrators' computers occurred in 2012.

(Id. at No. 14).

It is troubling that Defendant's counsel, before completing his investigation,

provided information to Plaintiff's counsel—and the Court—which ultimately

turned out to be false.  It is also troubling that Dr. Dowd was not prepared at his

deposition to answer specifically when Plaintiff's computer was reformatted and

recycled.[8]  This does not, however, support that, when Defendant failed to preserve

information allegedly stored on Plaintiff's computer, Defendant acted in bad faith

or with intent to deprive Plaintiff of the use of that information in this litigation.

The record is simply that Plaintiff's computer was reformatted or "wiped clean"

---

[8]     The Court directed Defendant to produce for deposition the person in charge
of its Information Technology Department to address what information is available
to reflect Plaintiff's computer usage.  (Tr. of June 30, 2015, Teleconf. at 7-9).

when it was recycled, which occurred at some point during the time DentFirst was

replacing and upgrading all practice administrators' computers.

Even assuming that Plaintiff's computer was reformatted and recycled after

Defendant knew Plaintiff filed an EEOC charge, Plaintiff fails to show that

Defendant intentionally destroyed Plaintiff's computer knowing it contained

information Plaintiff would want to use in this litigation.  See Conner v. Sun Trust

Bank, 546 F. Supp. 2d 1360, 1376-77 (N.D. Ga. 2008) (finding bad faith because

custodian "affirmatively deleted" the "most relevant email" despite being told to

preserve the document); Flury, 427 F.3d at 944-45 (in manufacturing defect case,

motorist failed to preserve the vehicle containing the alleged defect);

Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1281-82 (M.D. Fla. 2009) (defendants

took no steps to preserve any ediscovery despite several document preservation

demands sent by plaintiff); In re Delta/AirTran, 770 F. Supp. 2d at 1313 ("In

hindsight, Delta should not have waited to take these additional document

preservation steps," but "without some evidence that Delta's delay was intentional,

its failure to act more quickly does not prove bad faith.").  Because Plaintiff fails to

show that Defendant acted in bad faith or intended to deprive Plaintiff of

information for use in this litigation, Plaintiff is not entitled to the sanction she

seeks.  See Fed. R. Civ. P. 37(e)(2); Mann, 588 F.3d at 1310; Bashir, 119 F.3d at 931.  Plaintiff's Motion is denied for this additional reason.[9]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that "Motion to Dismiss or, in the Alternative, for Sanctions for Spoliation of Evidence" [19] is **DENIED**.

**SO ORDERED** this 24th day of March, 2016.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[9]    Plaintiff also seeks, under Rule 37(a)(5)(A), an award of the attorneys' fees and expenses she incurred in preparing her Motion and the "discovery required to expose this pattern of spoliation of evidence, in the amount of $21,000."  (Pl's Br. in Supp. at 19).  Plaintiff's Motion having been denied, she cannot recover under Rule 37(a)(5)(A).  See Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").