# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**KENDRA MARSHALL,**

        **Plaintiff,**

    **v.**

**DENTFIRST, P.C.,**

        **Defendant.**

**1:14-cv-2421-WSD**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Kendra Marshall's ("Plaintiff")

Motion for Summary Judgment [22] and Defendant Dentfirst, P.C.'s ("Defendant")

Motion for Summary Judgment [23].

## I.    BACKGROUND

### A.    Facts[1]

In October 1992, Plaintiff began working for Defendant as a dental assistant. (Defendant's Statement of Undisputed Material Facts [23.2] ("DSMF") ¶ 1). Three (3) to five (5) years later, she took a position in Defendant's patient services team.  (June 5, 2015 Deposition of Kendra Marshall [23.3] ("Marshall Dep. I"), at 11:2-12:3).  After "a few years," she was promoted to Assistant Periodontal Administrator and, later, to Periodontal Administrator.  (Marshall Dep. I, at 12:1-8, 15:21-16:4; DSMF ¶ 2).  As Periodontal Administrator, Plaintiff was responsible for discussing treatment plans with patients, addressing their questions and

---

[1]    Plaintiff's filings violate Local Rule 56.1—which the Eleventh Circuit holds in "high esteem"—and make it burdensome for the Court to determine "what is, and what is not, genuinely controverted."  Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008).  Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment [22.2] ("PSMF") violates the Local Rules because the facts asserted are not "numbered separately."  LR 56.1(B)(1), NDGa. Plaintiff's Rule 56.1(B) filings often are argumentative, frivolous, not directly responsive to Defendant's assertions, "not supported by a citation to evidence (including page or paragraph number)," and rely on general citations to "exhibits" that are scattered across multiple filings and burdensome to locate.  See LR 56.1(B), NDGa.  Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact."  Reese, 527 F.3d at 1268. Courts also must ignore facts asserted by a moving party that do not comply with the Rule.  See LR  56.1(1), NDGa.  Relying on these well-established principles and the deficiencies in Plaintiff's work product, and having conducted an independent review of the record, the Court disregards or rejects several factual assertions in Plaintiff's Rule 56.1(B) filings.

concerns, discussing fees and payment options, and collecting any periodontal-related payments. (DSMF ¶¶ 4-6). Although not initially assigned to a particular office, Plaintiff eventually became the Practice Administrator for Defendant's office in Cobb. (Marshall Dep. I, at 24:1-22; DSMF ¶ 8). Plaintiff regularly interacted with Defendant's doctors, supervised approximately fifteen (15) employees, was given significant autonomy, and was supervised loosely by the Director of Operations. (DSMF ¶¶ 3-4, 7, 9; Marshall Dep. I, at 18:13-21:3; June 15, 2015 Deposition of Christina Bennett [23.4] ("Bennett Dep.") 38:19-41:16, 44:10-12).

Christina Bennett ("Bennett") began working for Defendant approximately fourteen (14) years ago. (DSMF ¶ 10; Bennett Dep. 6:4). In or around July 2011, she became Director of Operations. (DSMF ¶ 11). With some assistance from a human resources ("HR") broker, Bennett handles personnel matters for Defendant. (DSMF ¶¶ 12-13; Bennett Dep. 8:10-9:17). Bennett is supervised by Defendant's owners. (DSMF ¶ 14). In October 2011, Defendant's HR Manager position was vacant and Bennett temporarily handled those responsibilities. (DSMF ¶ 15).

3

Shortly before October 10, 2011, Bennett received complaints about Plaintiff's conduct and performance at work. (DSMF ¶ 18).[2] Doctor Vengatesh told Bennett she was "very concerned with how the patients were being treated, how the financials were being handled, how they were being scheduled, [and] how the charts were being critiqued." (DSMF ¶ 19). There were complaints "that the pretreatments weren't being entered or called on or followed up on, and that the money wasn't being collected appropriately at the front." (DSMF ¶ 48; see Bennett Dep. 120:10-25). One doctor was particularly concerned that "things were not being collected or when they wanted someone to have some sort of a financial arrangement that they were not allowed to do so." (DSMF ¶ 49; see Bennett Dep. 120:10-25). Office staff said they were delegated too many responsibilities and were not sufficiently supported. (DSMF ¶ 19). Hygienists felt that patients were treated unfairly and that "the books weren't being handled properly." (DSMF ¶ 19). Employees told Bennett that Plaintiff made inappropriate comments, including that she wanted to hire more white people. (DSMF ¶ 47; see

---

[2]     Plaintiff disputes DSMF ¶ 18, citing "Exhibit 13" and "Exhibit 31." (See Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [25.2] ("Pl. Resp. to DSMF") ¶ 18). Because Plaintiff does not offer specific "citation[s] to evidence (including page or paragraph number)," the Court deems admitted DSMF ¶ 18. See LR 56.1(B)(2)(a)(2), NDGa. Even considering Plaintiff's response, Plaintiff does not directly dispute DSMF ¶ 18.

Bennett Dep. 108:15-25).  Others complained that Plaintiff discussed "awkward" personal issues in the office.  (DSMF ¶ 19).  The complaints were oral, not written. (DSMF ¶ 17).

On October 10, 2011, Bennett met with Plaintiff and advised her of "complaints from staff, from doctors, from patients about things, various things that had happened in the office or had not happened in the office."  (DSMF ¶ 16).[3] Plaintiff denied some of the allegations but admitted others.  (DSMF ¶ 20; Bennett Dep. 48:25-49:3).  Bennett told Plaintiff to take time off from work so that Bennett could investigate the complaints.  (DSMF ¶ 23).  Bennett was concerned that Plaintiff's staff would not speak candidly or "feel free to answer [Bennett] with [Plaintiff] sitting within earshot."  (DSMF ¶ 24).  At least one employee told Bennett that, after the meeting, Plaintiff "went into the office as their supervisor and told them to protect her and not throw her under the bus."  (DSMF ¶ 25).

---

[3]    Although Plaintiff disputes DSMF ¶ 16, she does not offer contradictory evidence showing a genuine dispute of fact.  (See Pl. Resp. to DSMF ¶ 16). Plaintiff's citations show (1) Plaintiff testified that Bennett told her "there were a few issues that [Bennett] had with the Cobb office," which were "disturbing" and "caught [Plaintiff] off guard," (2) Plaintiff testified that Bennett did not raise certain specific complaints, which are not alleged in DSMF ¶ 16, and (3) Bennett testified that at least four (4) employees complained about Plaintiff, including about her treatment of patients, and that Bennett then conducted an investigation into the complaints.  (See Marshall Dep. I, at 53:1-22; September 9, 2015 Deposition of Kendra Marshall [23.7] ("Marshall Dep. II"), at 54:21-57.1; Bennett Dep. 58:19-60:6).

Bennett's investigation revealed widespread concerns about Plaintiff's performance and conduct at work.  (DSMF ¶ 26).[4]  One employee "confirmed there was a lot of [Plaintiff] being out of the office or unavailable or doing other things other than DentFirst things and a lot of personal discussions going on, and there seemed to be tension at times between her and staff members."  (DSMF ¶ 27).  Shannon King told Bennett that Plaintiff "was often not at the office, that [Plaintiff] was doing more personal stuff than job-related stuff, that employees in the office were getting frustrated, and that I did not want to return to that office after [I] completed the maternity leave I was about to begin."  (DSMF ¶ 28; May 6, 2015 Declaration of Shannon King [23.5] ("King Decl.") ¶ 4).[5]  Ms. King also told Bennett that she did not think Plaintiff was "doing her job properly" because of her "frequent absences and excessive delegation."  (King Decl. ¶ 4).  Bennett reviewed a list, given to her by Doctor Vengatesh, of patients unsatisfied with their experience at Defendant, including their experience with Plaintiff.  (See DSMF ¶¶ 19, 30; Bennett Dep. 63:20-21).  Bennett did not contact these patients directly

---

[4]     Plaintiff "disputes" DSMF ¶ 26 but merely asserts, without citation, that "Defendant's allegations are contrary to disclosed evidence."  (Pl. Resp. to DSMF ¶ 26).  This is insufficient under the Local Rules.  See LR 56.1(B)(2)(a), NDGa.
[5]     Although Plaintiff claims Plaintiff often was out of the office on work-related business, this does not contradict DSMF ¶ 28.  (See Pl. Resp. to DSMF ¶ 28).

because she felt there was no reason to do so "[i]f they had already been contacted by [Deborah] Harlin," who handled patient complaints for Defendant.  (DSMF ¶ 32; Bennett Dep. 124:16-17).

Employees complained that Plaintiff talked at work about her personal and marriage-related problems, that this made them feel awkward, and that it affected their workday.  (DSMF ¶¶ 33, 36).  Although this did not violate any rules, Bennett believed that discussing personal issues while "on the clock" was a poor management decision.  (DSMF ¶¶ 33-34).  Employees told Bennett that Plaintiff spent time at work shopping online and discussing the boutique business she operated.  (DSMF ¶¶ 38, 41-42).  Defendant did not keep a record of employees' internet browsing history and Bennett did not involve Defendant's IT department in her investigation because, "[a]fter talking with [Plaintiff's] employees about the vast arrays of complaints that they had, [Bennett] felt that [her] information was sufficient."  (DSMF ¶¶ 39-40).[6]

Bennett received complaints that Plaintiff allowed employees to "clock in," and earn money, when they were not needed.  (DSMF ¶¶ 43-44).  Some employees complained that Plaintiff told office staff "that the owners would shut the office

---

[6]     Each employee's computer kept an internet browsing history that could be deleted by the employee.  (Pl. Resp. to DSMF ¶ 39).

down if they didn't get better at production, collection, whatever the matter may be." (DSMF ¶ 45). Bennett testified that these remarks were "[c]ertainly not something DentFirst used to motivate employees" and she did not know why Plaintiff made them. (DSMF ¶ 46).

Doctor Vengatesh, Shannon King, and Vicki Wedge each told Bennett they did not want to work with Plaintiff any longer. (DSMF ¶ 50). Doctor Vengatesh and others thought "there was no way to correct [Plaintiff's] behavior." (DSMF ¶¶ 51-52). Bennett did not witness the incidents reported to her by the office staff. (DSMF ¶ 53).

On or around October 17, 2011, after concluding her investigation, Bennett and Defendant's owners decided that Plaintiff could not continue to serve in a leadership role in the Cobb office. (Bennett Dep. 51:17-52:5, 53:16-18, 70:21-24). Defendant was willing to allow Plaintiff to work as a traveling Periodontal Administrator. (DSMF ¶ 61).

After speaking with Defendant's owners, Bennett met with Plaintiff.[7] Defendant's comptroller, Marilyn Pattison, also attended the meeting. (DSMF

---

[7]    The parties appear to dispute whether there were one or two meetings. Bennett testified that she initially met with Plaintiff on October 17, 2011, and then again on October 19, 2011, when Plaintiff was terminated. (Bennett Dep. 133:10-23, 134:24-25, 152:8-10; October 9, 2015 Declaration of Christina Bennett [23.8]

¶ 64).  Bennett told Plaintiff that she investigated the complaints made about

Plaintiff and that Plaintiff could not continue in her position in the Cobb office.

(Marshall Dep. I, at 57:12-13; 60:8-9).  There was some discussion about whether

Plaintiff could work in a different position.  (Marshall Dep. I, at 57:12-24).

Plaintiff said she was willing to work only as a Practice Administrator for the Cobb

or Town Center offices, or as a non-travelling Periodontal Administrator.  (DSMF

¶¶ 62-65; Bennett Dep. 53:22-54:23, 55:24-56:7, 56:20-57:2, 154:23-155:1).[8]

Defendant believed these options were not viable.  (Id.).

Plaintiff was terminated on October 19, 2011.  She was fifty-two (52) years

old when the termination occurred.  ([19.4]; DSMF ¶ 76; [26.1] at 2).  Catherine

Raynor, who was under forty (40) years old, replaced Plaintiff as Practice

Administrator for the Cobb office.  ([26.1] at 2; Bennett Dep. 138:7-9).  She was

---

("Bennett Decl.") ¶ 2).  Plaintiff suggested there was a single meeting on
October 19, 2011, when she was terminated.  (Marshall Dep. I, at 54:21-56:23).
The number of meetings is not material.

[8]      Plaintiff does not recall whether she made these statements.  (Marshall
Dep. I, at 58:15-59:24; Marshall Dep. II, at 59:1-4).  She testified she "could have
easily have [sic] said something to the effect that [she] would want to still be in the
management role that [she] had."  (Marshall Dep. I, at 58:18-23).  She also
testified that she did not like traveling but that, because "the perio department
always traveled," it "was kind of ludicrous to think" she would not have done it if
required.  (Marshall Dep. I, at 58:24-59:6).  Plaintiff claims that Bennett did not
offer her another position.  (Marshall Dep. I, at 57:21-58:3; Marshall Dep. II, at
54:15-18).  None of these statements create a genuine issue of material fact.

promoted from Assistant Practice Administrator of Defendant's Norcross office. (Bennett Dep. 138:14-21).

Plaintiff's separation notice, signed by Bennett, states that Plaintiff was "la[id] off" due to a "reduction in workforce." ([19.4]). Defendant admits that Plaintiff was not terminated due to a "reduction in workforce" and that Bennett's certification in the separation notice was inaccurate. ([26.1] at 2; DSMF ¶ 71; Bennett Dep. 20:6-10). Defendant claims it mischaracterized the reason for Plaintiff's termination because it "wanted [Plaintiff] to have the opportunity to collect unemployment benefits if she was eligible for them." (Bennett Dep. 156:16-25; [25.1] ¶ 52). Bennett did not have formal HR training and testified that she "didn't know any better." (DSMF ¶ 71; Bennett Dep. 20:6-24, 156:16-20).[9]

---

[9]     Plaintiff disputes Defendant's claim that Plaintiff asked to be "laid off instead of terminated so that she could collect unemployment benefits." (DSMF ¶ 69; Bennett Dep. 22:19-23; May 1, 2015 Declaration of Marilyn Pattison [23.9] ("Pattison Decl.") ¶ 3; Marshall Dep. I, at 60:13-61:3). Plaintiff testified that the separation notice was completed and signed prior to the October 19, 2011, meeting. (Marshall Dep. I, at 56:15-57:2). Plaintiff also testified that, at the time, she did not know what a "reduction in workforce" meant or what separation reasons would entitle her to unemployment benefits. (Marshall Dep. I, at 60:16-25). Whether Plaintiff asked Defendant to characterize her termination as a "lay off" is immaterial.

B.   Procedural History

On or about April 12, 2012, Plaintiff filed a charge with the Equal

Employment Opportunity Commission ("EEOC"), alleging that, in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*,

Defendant terminated her employment because of her age.  ([25.10]).  On

June 15, 2012, Defendant responded to Plaintiff's EEOC charge.  ([19.5]).

Defendant asserted that Plaintiff was terminated because of complaints about her

performance, and that Defendant mischaracterized her separation as a "reduction in

force" to "facilitate her receipt of unemployment benefits."  ([19.5]).  On

June 30, 2012, Plaintiff filed a Chapter 13 bankruptcy petition, which did not

disclose Plaintiff's EEOC claim.  (DSMF ¶¶ 81-82).

Plaintiff alleges that, on May 6, 2014, she received notice from the EEOC of

her right to sue.  (Compl. ¶ 6).[10]  On July 28, 2014, Plaintiff filed her

---

[10]   "Title VII and ADEA actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge." Santini v. Cleveland Clinic Florida, 232 F.3d 823, 825 (11th Cir. 2000).  "The time limit is non-jurisdictional."  Gant v. Jefferson Energy Co-op., 348 F. App'x 433, 434 (11th Cir. 2009).  "Once a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement."  Kerr v. McDonald's Corp., 427 F.3d 947, 951 (11th Cir. 2005).  In its Answer [4], Defendant generally denied paragraph 6 of the Complaint but did not offer a "specific and particular denial" of Plaintiff's assertion that she received notice from the EEOC on May 6, 2014.

Complaint [1], asserting six (6) claims under the ADEA.  Plaintiff asserts claims for disparate treatment (Count One), disparate impact (Count Two), "intentional discriminatory termination" (Count Three), "intentional discriminatory termination with malice" (Count Four), "willful discriminatory termination with malice" (Count Five), and "discriminatory termination with reckless indifference" (Count Six).

On August 28, 2015, Plaintiff filed her Motion to Dismiss or in the Alternative for Sanctions for Spoilation of Evidence [19].  Plaintiff sought sanctions against Defendant for its alleged failure to preserve certain evidence.

On October 13, 2015, Plaintiff filed her Motion for Summary Judgment, arguing (1) that she established a prima facie case of age discrimination, and (2) that Defendant "fail[s] to meet its burden of production of admissible evidence that its termination of Plaintiff was for any legitimate, non-discriminatory reason." ([22.1] at 22).  Plaintiff claims that Defendant did not believe the staff complaints were accurate because the complaints were unverified, Defendant did not look for supporting documentary evidence, and Defendant destroyed evidence concerning the complaints.  Plaintiff argues that the complaints are inadmissible hearsay and

---

Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1010-11 (11th Cir. 1982); (see [4] ¶ 6).  Defendant also does not argue, on summary judgment, that Plaintiff untimely filed her Complaint [1].  The Court thus does not address the issue.

did not allege violations of Defendant's work rules.

On October 14, 2015, Defendant filed its Motion for Summary Judgment, arguing that (1) judicial estoppel precludes Plaintiff's ADEA claims because Plaintiff failed to timely disclose those claims in her bankruptcy proceeding, and (2) Defendant articulated a non-discriminatory reason for terminating Plaintiff, namely, that Defendant lost confidence in Plaintiff's leadership based on complaints from office staff.

On October 30, 2015, two weeks after Defendant filed its Motion for Summary Judgment, Plaintiff disclosed her EEOC claim to the bankruptcy court. See Amendment to Schedule B and Summary of Schedules, In re Marshall, No. 12-66359 (Bankr. N.D. Ga. Oct. 30, 2015), ECF No. 43.

On March 24, 2016, the Court denied [29] Plaintiff's Motion to Dismiss or in the Alternative for Sanctions for Spoilation of Evidence.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'"   W. Grp. Nurseries, Inc. v. Ergas,

13

167 F.3d 1354, 1360 (11th Cir. 1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Id.</u> at 1361 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof."  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1281-82 (11th Cir. 1999).  Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Id.</u> at 1282.  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

14

nonmoving party, there is no genuine issue for trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Id.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Id.  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.

"If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted."  Herzog, 193 F.3d at 1247; see Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict" (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted))).

## III.   DISCUSSION

A.   <u>Plaintiff's ADEA Claims:  The McDonnell Douglas Framework</u>

Where, as here, an employee relies on circumstantial evidence to support her ADEA claims, courts apply the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Godwin v. WellStar Health Sys., Inc.</u>, 615 F. App'x 518, 527 (11th Cir. 2015). Under the <u>McDonnell Douglas</u> framework, an ADEA plaintiff must first establish a prima facie case of age discrimination by showing that she "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by . . .  a younger individual." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000).  If a prima facie case is shown, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the challenged employment action."  <u>Id.</u>  If the employer does so, the plaintiff "must present significant probative evidence that the articulated reason is merely a pretext for discrimination."  <u>Elrod v. Sears,</u> <u>Robuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991).  "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1333 (11th Cir. 2013).  "Ultimately, . . . a plaintiff must show that the discriminatory reason was the but-for cause of the

adverse employment action."  Godwin , 615 F. App'x at 527; see Gross v. FBL

Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009).

     1.  Plaintiff's Prima Facie Age Discrimination Case

  Plaintiff was fifty-two (52) years old, and thus within the protected age

group, when she was terminated.  See 29 U.S.C. § 631(a) ("The prohibitions in this

chapter shall be limited to individuals who are at least 40 years of age.");

([26.1] at 2).  Defendant replaced her with a younger employee, who was under

forty (40) years old.  ([26.1] at 2).

  Plaintiff worked for Defendant for nineteen (19) years and Defendant states

she was "an excellent employee for many years."  ([26.1] at 2; [25.1] ¶ 51; see also

Bennett Dep. 156:16-20; ("[Plaintiff] had been a great employee. . . .  She had had

several good times."); July 9, 2015 Deposition of Brian Dowd [23.6] ("Dowd

Dep.") 60:1-12 ("For years [Plaintiff] had been a team leader.  She had encouraged

people, helped people, managed people for the good of the company. . . .  She had

handled it in the past.")).  This is sufficient evidence that Plaintiff was qualified for

the job.  See Elrod, 939 F.2d at 1470 ("Elrod's 22½ years of service coupled with

his favorable employment reviews are sufficient evidence that he was qualified for

the job to meet the first McDonnell Douglas hurdle."); Baker v. Sears, Roebuck

& Co., 903 F.2d 1515, 1520 (11th Cir. 1990) (that plaintiff was qualified "may be

established by evidence that the plaintiff has performed her responsibilities for several years without complaint"). The Court finds, and Defendant does not dispute, that Plaintiff has established a prima facie case of age discrimination. This establishes an inference that she was terminated because of her age. See Elrod, 939 F.2d at 1470.

### 2. Defendant's Non-Discriminatory Reasons

"The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). The employer's burden is "exceedingly light," Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995), and is "merely one of production," Chapman, 229 F.3d at 1024. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 1024 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)) (internal quotation marks omitted).

Defendant squarely meets its burden. Bennett testified, in reasonable detail, that she received several complaints about Plaintiff's performance at work, which she then investigated. She testified that, "based on the number and the type of

complaints" about Plaintiff and her work performance, Bennett and Defendant's owners decided Plaintiff could not continue to hold her management position in the Cobb office.  (Bennett Dep. 70:21-24, 85:24-86:9).  Bennett testified further that Defendant was willing to move Plaintiff into a different position, but that Plaintiff stated she would work only in a handful of unavailable non-traveling positions, and that Defendant terminated her because it could not meet her demands.  (Bennett Dep. 21:19-22:23, 53:16-57:2, 69:11-15, 70:10-13).  Other evidence supports these assertions.  (See King Decl. (confirming that she complained about Plaintiff); Dowd Dep. 59:11-61:18; 63:15-23; 79:13-21; October 9, 2015 Declaration of Christina Bennett [23.8] ("Bennett Decl.") ¶ 4 ("[I]n reaching my conclusions, I relied on what those employees told me about their observations and feelings."); Pattison Decl. ¶¶ 2-3 (stating that Plaintiff told Bennett she "was not willing to do certain . . . things" and "was dealing with some personal issues and that it might be better for her if DentFirst laid her off"); Marshall Dep. I, at 46:22-23, 53:1-22, 57:12-13, 60:8-9).

This evidence satisfies Defendant's "exceedingly light" burden of production.  Walker, 53 F.3d at 1556; see Godwin, 615 F. App'x at 527 ("[T]he burden is one of production, not persuasion.").  Defendant has articulated non-discriminatory reasons for terminating Plaintiff, namely, that Defendant lost

confidence in her leadership based on several staff complaints and that Plaintiff stated she would only work in non-traveling positions, none of which were available.

> 3.   Pretext

Defendant having articulated a non-discriminatory reason for terminating Plaintiff's employment, the burden shifts to Plaintiff to show Defendant's proffered reason is pretextual.  "[A]n employee must meet [the employer's] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  Chapman, 229 F.3d at 1030.  Plaintiff can establish pretext "either by showing that [the employer's] proffered reason is unworthy of credence or by showing that age more than likely motivated [the employer] to fire [her]."  Elrod, 939 F.2d at 1470.  Plaintiff must "present significant probative evidence," id. at 1470, "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," Chapman, 229 F.3d at 1024 (quoting Combs, 106 F.3d at 1528) (internal quotation marks omitted).

> a)   *Whether Defendant's Proffered Reason is Unworthy of Credence*

A plaintiff may show an employer's proffered reason for adverse employment action is not credible by demonstrating sufficient "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in the

employer's proffered rationale.  Combs, 106 F.3d at 1538 (quoting Sheridan v. E.I.

DuPont De Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal

quotation marks omitted)).

     In her Motion for Summary Judgment, Plaintiff argues that "Defendant has

produced virtually no evidence to support any of its allegations of poor

performance against Plaintiff" and that Defendant "has merely made unsupported

allegations of misconduct against Plaintiff."  ([22.1] at 6, 21).  Plaintiff's attack on

the validity of the complaints is insufficient to establish pretext.  The question is

whether Defendant honestly believed the complaints were accurate or undermined

Plaintiff's leadership and, if so, whether this belief was the basis for Plaintiff's

termination.  See Vahey v. Philips Elect.N. Am. Corp., 461 F. App'x 873, 875

(11th Cir. 2012) ("[I]f the employer acted on an honestly held belief that the

employee engaged in misconduct, even if it was mistaken, no discrimination

exists."); Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)

("Alvarez argues at length that [defendant's] complaints about the quality of her

work were unfounded, but the fact that she thinks more highly of her performance

than her employer does is beside the point.  The inquiry into pretext centers on the

employer's beliefs, not the employee's beliefs and, to be blunt about it, not on

reality as it exists outside of the decision maker's head.").[11]

Plaintiff reframed her argument after Defendant pointed out that the actual validity of the complaints is irrelevant.  Plaintiff now claims the lack of documentary evidence, and Defendant's limited efforts to obtain such evidence, show Defendant did not really believe the complaints were accurate and thus Defendant did not terminate Plaintiff because of the complaints.  (See [25] at 15-16; [28] at 4, 6-10).  The Court disagrees.  Given the record here, the documentary evidence issues raised by Plaintiff do not constitute "significant probative evidence" (1) that Defendant disbelieved the accuracy or sincerity of the complaints, or (2) that Defendant did not terminate Plaintiff because of the complaints.  Elrod, 939 F.2d at 1470.

Bennett received, from a variety of employees, several complaints about Plaintiff, her conduct at work, and her management.  On October 10, 2011, Bennett met with Plaintiff and told her about certain of these complaints.  Bennett then investigated the complaints for about a week.  Bennett's interviews confirmed

---

[11]   Plaintiff argues that the complaints did not allege violations of Defendant's work "rules."  (See, e.g., [22.1] at 11; [25] at 14, 17; [28] at 11).  Whether Defendant had "rules," and whether Plaintiff violated them, is irrelevant.  "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984); see Elrod, 939 F.2d at 1470.

there were issues and concerns with Plaintiff's performance.  Some employees,

including Doctor Vengatesh, stated they could no longer work with Plaintiff.

Bennett began reviewing "time clock [records] more closely" to see if Plaintiff was

allowing staff to "clock in" without work to do, (Bennett Dep. 149:17-150:21), and

she reviewed the status of payment collections, (Bennett Dep. 119:8-13).  Brian

Dowd, one of Defendant's owners, believed Plaintiff "had more than she could

handle" and "was creating a hostile work environment."  (Dowd Dep.

59:17-60:21).  These facts show that Defendant believed the complaints were

accurate or sincere.  See Vahey, 461 F. App'x at 876 ("[N]othing evidences that

[the employer] believed that the complaints lacked credibility, particularly given

his interviews with [the employee's] subordinates and the

independently-conducted 360 review.").

The record also supports Defendant's argument that it terminated Plaintiff

because of the complaints.[12]  Bennett testified that, because of the "vast array of

complaints," Defendant decided Plaintiff could not continue to work as Practice

---

[12]     Bennett testified that Defendant removed Plaintiff from the Cobb Office because "the people [she was] supposed to be leading [didn't] have any confidence in her anymore" and because some employees threatened to leave if her behavior was not addressed.  (Bennett Dep. 86:2-23; see Bennett Dep. 68:10-17, 70:21-71:4).  These rationales depend on a belief in the sincerity, not only the accuracy, of the complaints.  Plaintiff does not even argue, much less produce evidence, that Defendant lacked this belief.

Administrator for the Cobb office.  (See Bennett Dep. 78:9-15, 83:3-5, 84:25-85:4;

Bennett Decl. ¶ 4).  Defendant terminated Plaintiff shortly after Bennett's

investigation concluded.  At Plaintiff's termination meeting, Bennett told Plaintiff

she had investigated the complaints and "didn't really know where they could fit

[Plaintiff] in any other job in the company."  (Marshall Dep. I, at 57:12-18).  The

probative value of the documentary evidence issues, raised by Plaintiff, is minimal

in light of the evidence supporting Defendant's proffered reasons for terminating

Plaintiff's employment.[13]

    Plaintiff also implies that Defendant's proffered reasons are pretextual

because Defendant initially stated falsely, on Plaintiff's separation notice, that she

was being terminated due to a reduction in workforce.  "Simply showing that

[Defendant] initially gave a false reason . . . is insufficient to find the proffered

reason unworthy of credence."  Robinson v. Hoover Enterprises, Inc.,

---

[13]    Even if Defendant typically terminated employees only where there was proof or an admission of misconduct—which, contrary to Plaintiff's assertion, is not clear from the record—"deviation from a company policy does not demonstrate discriminatory animus."  Mitchell v. USBI Co., 186 F.3d 1352, 1355-56 (11th Cir. 1999); see Keaton v. Cobb Cty., GA, No. 08-11220, 2009 WL 212097, at *5 n.6 (11th Cir. Jan. 30, 2009) ("[T]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." (quoting Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1350 (11th Cir. 2007))).

24

No. 1:03-cv-2565, 2004 WL 2792057, at *8 (N.D. Ga. Oct. 20, 2004) (finding no pretext where Defendant initially told plaintiff, incorrectly, that he was being terminated "because his position was being eliminated").  This is particularly true where, as here, Defendant's explanation for the initially stated reason is plausible. See id. (where defendant falsely told plaintiff he was being terminated "because his position was being eliminated," the court found "entirely plausible" the employer's explanation that it initially offered the false reason "so that [the employee] could collect unemployment [benefits]").  Further, Defendant's proffered reasons for terminating Plaintiff are not inconsistent with its workforce reduction explanation, and an employer's "reasons must be fundamentally inconsistent in order to constitute evidence of pretext."  Philips v. Aaron Rents, Inc., 262 F. App'x 202, 210 (11th Cir. 2008); see Tidwell v. Carter Products, 135 F.3d 1422, 1428 (11th Cir. 1998); Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1458 (11th Cir. 1997).

Plaintiff has not produced "significant probative evidence," Elrod, 939 F.2d at 1470, showing that Defendant's proffered reason for terminating Plaintiff "should not be believed," Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332

(11th Cir. 1998).[14]

        *b)*    *Whether Age Discrimination More Likely Motivated*
              *Defendant than the Proffered Reason*

    ADEA plaintiffs also can show pretext by demonstrating that, "in light of all

of the evidence, discriminatory reasons more likely motivated [Defendant's

employment] decision than the proffered reasons." Id. at 1332.  Plaintiff has failed

to do this.  "[T]he record reveals either no evidence at all of age bias on the part of

[Defendant], or an inference so weak (especially as compared to the overwhelming

evidence of the legitimacy of [Defendant's] decision) that it would fall far short of

satisfying [Plaintiff's] burden of proving that age bias on the part of [Defendant]

was the 'but-for' cause of [Plaintiff's termination]."  Sims, 704 F.3d at 1334; see

---

[14]     In challenging Defendant's proffered reason for terminating her
employment, Plaintiff asks the Court to disregard Bennett's testimony "in its
entirety" because it is "untrustworthy."  ([25] at 9, 13).  The Court is not permitted
to perform credibility determinations at the summary judgment stage.  See
Allen-Sherrod v. Henry Cty. Sch. Dist., 248 F. App'x 145, 147 (11th Cir. 2007)
("At summary judgment it is improper for the court to consider the credibility of
any witness.").
     Plaintiff also claims that Defendant impermissibly relies on Bennett's
testimony because it includes inadmissible hearsay about the complaints.
(See, e.g., [22.1] at 8-9, 11-13).  This argument fails.  Defendant asserts that the
"complaints were the basis for DentFirst's determination that Plaintiff could not
remain in a leadership position."  ([27] at 11; see [26] at 12-13).  Thus, Bennett's
statements about the complaints "are not hearsay because they provide evidence of
the basis for [Bennett's] employment decision, i.e. [her] state of mind, and are not
offered for the truth of the matter asserted."  Parker v. Chilton Cty. Bd. of Educ.,
No. 2:12-cv-650, 2014 WL 116341, at *5 n.5 (M.D. Ala. Jan. 13, 2014).

Kohser v. Protective Life Corp., No. 15-11704, 2016 WL 2587169, at *3 (11th Cir. May 5, 2016) ("The record here showed that Protective Life fired Kohser after her subordinates submitted numerous complaints about her . . . .  Because Kohser presented no evidence showing that Protective Life was actually motivated by a discriminatory animus, the district court correctly concluded that no genuine dispute of material fact existed as to Kohser's age and sex discrimination claims.").

Indeed, when asked in her deposition why she believed she was terminated because of her age, Plaintiff answered "Only because of my age, why?  It's my age and my longevity with the company and my benefits and my salary."  (Marshall Dep. II, at 49:22-50:3).  When asked why she believed that, she responded "I just do."  (Marshall Dep. II, at 50:4-5).  When asked to provide facts supporting her belief, she said, without elaboration, "I was terminated."  (Marshall Dep. II, at 50:6-8).  At most, Plaintiff alleges that age was one of several factors that motivated Defendant to terminate her.  This is insufficient.  The ADEA does not allow "mixed-motives age discrimination claim[s]."  Gross, 557 U.S. at 175; see Huff v. Power Partners, Inc., No. 3:08-cv-52, 2010 WL 797201, at *5 n.4 (M.D. Ga. Mar. 4, 2010) ("Unlike Title VII, the ADEA does not authorize a mixed-motives age discrimination claim, so Plaintiff cannot prevail by simply showing that age was a motivating factor in the decision to terminate him; he must

show that he was terminated *because of* his age.").  Even if it did, Plaintiff does not

cite any evidence supporting her belief that age contributed to her termination and,

having reviewed the record, it is easy to see why:  "[t]here is virtually no evidence

of age bias on the part of [Defendant]."  <u>Sims</u>, 704 F.3d at 1334.  That Plaintiff was

fifty-two (52) years old when she was replaced by a younger employee is not

enough.

"The burden of persuasion always remains on the plaintiff in an ADEA case

to proffer evidence sufficient to permit a reasonable fact finder to conclude that the

discriminatory animus was the 'but-for' cause of the adverse employment action."

<u>Id.</u> at 1332.  Plaintiff has not met this burden, and Defendant is entitled to

summary judgment on her ADEA claims.[15, 16]

---

[15]  Plaintiff argues that Defendant destroyed documentary evidence relevant to the accuracy of the complaints about Plaintiff's performance.  (<u>See, e.g.</u>, [28] at 12).  Courts "draw an adverse inference 'from a party's failure to preserve evidence, but only when the absence of that evidence is predicated on bad faith." <u>Phillips v. Aaron Rents, Inc.</u>, 262 F. App'x 202, 210 (11th Cir. 2008) (quoting <u>Bashir v. Amtrak</u>, 119 F.3d 929, 931 (11th Cir.1997) (per curiam)).  This Court already has found that "Plaintiff fails to show that Defendant acted in bad faith or intended to deprive Plaintiff of information for use in this litigation."  ([29] at 23). The Court also found that, even if Defendant destroyed the evidence, "Plaintiff fails to show that she suffered prejudice, that is, that the evidence was crucial to Plaintiff being able to prove her [ADEA claims]."  ([29] at 13).

[16]  Count 2 asserts a disparate impact claim under the ADEA, alleging vaguely that "[t]o the extent Defendant used any neutral criteria to terminate Plaintiff and others, said criteria had a disparate impact because of Plaintiff's age and was not

B.  <u>Judicial Estoppel</u>

Plaintiff's ADEA claims for damages also are barred by judicial estoppel. "Judicial estoppel is an equitable doctrine that precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" <u>Barger v. City of Cartersville, Ga.</u>, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1284 (11th Cir. 2002)).  "The doctrine exists 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" <u>Id.</u> (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50 (2001)).  There are "two primary factors for establishing the bar of

based on reasonable factors other than age." (Compl. ¶ 30).  The parties barely address this claim in their briefs.  (<u>See</u> [23] at 23; [25] at 23-24).  "Discrimination based on disparate impact requires a plaintiff to show: '1) there is a significant statistical disparity among members of different age groups; 2) there is a specific, facially-neutral employment policy or practice; and 3) there is a causal nexus between the specific policy or practice and the statistical disparity.'" <u>Cardelle v. Miami Beach Fraternal Order of Police</u>, 593 F. App'x 898, 901 (11th Cir. 2014) (quoting <u>Cooper v. S. Co.</u>, 390 F.3d 695, 724 (11th Cir. 2004)); <u>see</u> <u>Criswell v. Mobile Hous. Bd.</u>, No. 14-cv-00447, 2016 WL 742112, at *13 (S.D. Ala. Feb. 24, 2016) ("The plaintiff must ultimately show statistical evidence that the employment practice impacts members of a protected group.").  Plaintiff fails to establish any of these elements.  Plaintiff has not directed the Court to any statistical evidence showing disparities among different age groups, has not identified a specific, facially neutral employment policy, and has not identified any causal nexus between the policy and the statistical disparity.  Defendant is entitled to summary judgment on Plaintiff's disparate impact ADEA claim.

judicial estoppel.  'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)).  "[T]hese factors are not exhaustive" and "courts must always give due consideration to the circumstances of the particular case." Id.

"EEOC charges must be disclosed on bankruptcy petitions and failure to do so amounts to the taking of inconsistent positions under oath if the debtor later pursues those claims in court." Ellis v. CB & T Bank of Middle Georgia, No. 5:14-cv-102, 2015 WL 1636822, at *3 (M.D. Ga. Apr. 13, 2015); see Casanova v. Pre Sols., Inc., 228 F. App'x 837, 841 (11th Cir. 2007); Welker v. Orkin, LLC, No. 5:13-cv-126, 2014 WL 1572535, at *4 (M.D. Ga. Apr. 17, 2014); see also D'Antignac v. Deere & Co., 604 F. App'x 875, 877 (11th Cir. 2015), cert. denied, 136 S. Ct. 808 (2016), reh'g denied, 136 S. Ct. 1249 (2016). Likewise, "failure to timely amend a Chapter 13 reorganization plan to reflect a pending claim while simultaneously pursing that claim in another court of law constitutes inconsistent positions under oath." Robinson, 595 F.3d at 1275.

Plaintiff, represented by counsel, filed her EEOC discrimination charge in April 2012, her bankruptcy petition in June 2012, and her Complaint in July 2014. (See [19.7]; Marshall Dep. II, at 16:5-21; DSMF ¶ 81; Compl.).  Plaintiff personally signed, under penalty of perjury, her EEOC charge and the statement of financial affairs in her bankruptcy petition.  (See [19.7]); Statement of Financial Affairs 48, In re Marshall, No. 12-66359 (Bankr. N.D. Ga. June 30, 2012), ECF No. 1.  Plaintiff did not disclose her EEOC charge to the bankruptcy court until October 30, 2015, more than three (3) years after Plaintiff filed her charge and more than a year after she filed her Complaint.[17]  This "constitutes inconsistent positions under oath" and satisfies the first element of the judicial estoppel test. Robinson, 595 F.3d at 1275; see Huff v. Macon Behavioral Health Treatment, No. 5:11-cv-455, 2012 WL 1344355, at *2 (M.D. Ga. Apr. 18, 2012) ("Both of these actions—failure to initially list the EEOC charge as a potential asset and failure to timely amend her petition once she filed the present lawsuit—constitute the taking of inconsistent positions under oath."); Hands v. Winn-Dixie Stores, Inc., No. 09-cv-0619, 2010 WL 4496798, at *3 (S.D. Ala. Nov. 1, 2010).  Plaintiff does not dispute this conclusion.  (See [25] at 6-9).

---

[17]     It appears that Plaintiff still has not disclosed her ADEA lawsuit, filed in this Court, to the bankruptcy court.  See In re Marshall, No. 12-66359 (Bankr. N.D. Ga.).

The second element of the judicial estoppel test requires "intentional contradictions, not simple error or inadvertence." Robinson, 595 F.3d at 1275 (quoting Am. Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1536 (11th Cir. 1983)) (internal quotation marks omitted). "The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment." Barger, 348 F.3d at 1295. "A district court may thus infer intent from the record when the debtor has knowledge of the undisclosed claims and has motive to conceal them." D'Antignac, 604 F. App'x at 878; see Dunn v. Advanced Med. Specialties, Inc., 556 F. App'x 785, 788 (11th Cir. 2014) ("This circuit repeatedly has recognized that when a debtor fails to disclose a pending lawsuit to the bankruptcy court, while having knowledge of the lawsuit and a motive to conceal it, the doctrine of judicial estoppel bars the undisclosed action from proceeding."); Casanova, 228 F. App'x at 840-41; De Leon v. Comcar Industries, 321 F.3d 1289, 1291 (11th Cir. 2003).

"The record shows that [Plaintiff] knew of her claims against [Defendant] while her bankruptcy was pending." D'Antignac, 604 F. App'x at 879. Plaintiff filed her EEOC charge in April 2012, and filed her bankruptcy petition only two (2) months later. She personally signed both documents. "This court cannot

believe that when [s]he filed for bankruptcy, [Plaintiff] had forgotten that [s]he had recently lodged [EEOC] charges of [age] discrimination against [her] longtime employer." Lett v. Reliable Ruskin, No. 1:05-cv-479, 2006 WL 2056582, at *6 (M.D. Ala. July 24, 2006); see Hands v. Winn-Dixie Stores, Inc., No. 09-cv-0619, 2010 WL 4496798, at *4 (S.D. Ala. Nov. 1, 2010) (finding knowledge where plaintiff "personally signed the EEOC Charge"). Plaintiff also filed her Complaint in July 2014, when she "undoubtedly knew about her discrimination claims, . . . yet she made no effort to amend her bankruptcy petition until the Defendant[] challenged her on the issue." Huff, 2012 WL 1344355, at *2.

Plaintiff also "had a motive to make the inconsistent statements—namely, that if she did not disclose the claims to the bankruptcy court, she could keep all the proceeds if she won her suit against [Defendant]." D'Antignac, 604 F. App'x at 879; see Ellis, 2015 WL 1636822, at *3; see also Lett, 2006 WL 2056582, at *6. Plaintiff's knowledge and motive establishes "the necessary intent to mislead the bankruptcy court." D'Antignac, 604 F. App'x at 879; see Barger, 348 F.3d at 1296.[18]

---

[18]     Although Plaintiff disclosed her EEOC charge within the last year, she did so only after Defendant raised the issue in its Motion for Summary Judgment. Plaintiff does not argue that her untimely disclosure precludes judicial estoppel. Even if she did, "[t]he Eleventh Circuit has repeatedly cast an unsympathetic eye

Plaintiff argues that her failure to disclose her claims was "due to inadvertence, mistake and Plaintiff's lack of understanding of the nature of an administrative proceeding." ([25] at 8). "This *post hoc* plea of ignorance of bankruptcy disclosure requirements—when the schedules clearly demanded disclosure of 'all suits and administrative proceedings to which the debtor is or was a party' within the previous year, when [Plaintiff] was and is represented by bankruptcy counsel in those proceedings . . .—does not qualify as inadvertence under applicable Eleventh Circuit authorities, given [Plaintiff's] knowledge of [her] claims and [her] direct economic incentive to secret them from bankruptcy creditors." Hands, 2010 WL 4496798, at *4 n.8.[19]

---

to such stratagems, and has deemed them insufficient to dissipate the taint of the prior nondisclosure." Hands, 2010 WL 4496798, at *4; see, e.g., Barger, 348 F.3d at 1297; De Leon, 321 F.3d at 1292; Burnes, 291 F.3d at 1288; see also Hands, 2010 WL 4496798, at *4. "Plaintiff's recent amendment and disclosure of her discrimination claims to the bankruptcy court [does not] preclude application of judicial estoppel." Huff, 2012 WL 1344355, at *3.

[19]     Plaintiff implies that judicial estoppel does not preclude her claims because she trusted her attorney to properly handle her bankruptcy. ([25] at 7-8). This argument is foreclosed by Barger, which found that judicial estoppel is not precluded by attorney error. 348 F.3d at 1295. Plaintiff also argues that Defendant "failed to reveal this estoppel defense at any time prior to filing its Motion [for Summary Judgment]." ([25] at 9). Because "Plaintiff had full opportunity to respond to [Defendant's judicial estoppel] argument," Defendant's failure to raise the defense earlier does not save Plaintiff's claims. See Casanova, 228 F. App'x at 841 n.6 (rejecting plaintiff's argument that the district court erred in *sua sponte* "allowing Defendants to amend their motion for summary judgment to include the

Defendant is entitled to summary judgment on Plaintiff's damages claims, which are barred by judicial estoppel.  Although judicial estoppel does not bar Plaintiff's claims for declaratory and injunctive relief, those claims fail because, as explained earlier in this Order, Plaintiff fails to show she was terminated because of her age.  See Ellis, 2015 WL 1636822, at *4 ("Judicial estoppel . . . does not preclude [a plaintiff's] claims for declaratory and injunctive relief.").

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Dentfirst, P.C.'s Motion for Summary Judgment [23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Kendra Marshall's Motion for Summary Judgment [22] is **DENIED**.

**SO ORDERED** this 18th day of August, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

judicial estoppel argument," even though defendants "had not pleaded this defense in their answer").